# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA

WILLIAM P. LANDING,                              )
                                                 )
                    Plaintiff,                   )
                                                 )
            v.                                   )         CASE NO.: 3:11-CV-404-TLS-CAN
                                                 )
MICHAEL J. ASTRUE,                               )
Commissioner of Social Security                  )
Administration,                                  )
                                                 )
                    Defendant.                   )

## OPINION AND ORDER

The Plaintiff, William P. Landing, brought this action pursuant to 42 U.S.C. § 405(g)

seeking review of the Commissioner's final decision denying his application for supplementary

security income and disability insurance benefits. On October 21, 2011, this Court referred the

matter to Magistrate Judge Christopher Nuechterlein to prepare a report and recommendation.

After the submission of the parties' briefs, Magistrate Judge Nuechterlein filed a Report and

Recommendation [ECF No. 31] on January 28, 2013, recommending that the Court deny the

Plaintiff's request to reverse the Administrative Law Judge's (ALJ) opinion. The Magistrate

Judge reported that the ALJ properly weighed the opinions of the Plaintiff's treating sources and

the State agency psychological consultants, adequately accounted for the Plaintiff's physical

limitations, properly evaluated the Plaintiff's credibility, and committed only harmless error in

failing to identify DOT numbers concerning the number of jobs available in the national

economy .

On February 5, 2013, the Plaintiff filed his Objections to the Report and

Recommendations [ECF No. 32] requesting that the Court reject the Report and

Recommendation findings and grant his motion for summary judgment, awarding benefits to the

Plaintiff outright. In the alternative, the Plaintiff moves the Court to remand the case to the ALJ for further consideration. The Defendant did not file a Response to the Plaintiff's Objections.

Because the Plaintiff has objected to the Report and Recommendation, this Court must "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b)(3). The Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

## BACKGROUND

Applying the familiar five-step process for determining whether an applicant meets the definition of disability contained in the Social Security Act, *see* 20 C.F.R. § 404.1520; *Craft v. Astrue*, 539 F.3d 668, 673–74 (7th Cir. 2008), the ALJ found that the Plaintiff had not engaged in substantial gainful activity since his alleged onset date, had severe mental and physical impairments that did not meet a listing, and maintained the residual functional capacity (RFC) to perform a limited range of unskilled light work, as long as he: had the opportunity to sit or stand; only occasionally climbed stairs and ramps, kneeled, balanced, stooped, or crouched; was only required to understand, remember, and carry out simple, but not detailed or complex, instructions; was only required to make simple work-related decision; performed goal-oriented, rather than production rate pace, work; only occasionally had to converse or interact with others; and did not have to perform mathematics as part of his job responsibilities.

In arriving at this RFC, the ALJ afforded limited weight to the Plaintiff's own statements about his limitations due to psychological problems and physical limitations, finding that his

statements were not credible. The ALJ also gave limited weight to the opinions of Dr. Patta, the Plaintiff's psychiatrist, and Ms. Kolstad-Blanchard, the Plaintiff's therapist, noting that the Plaintiff's treatment records showed relative stability in his mental and physical health and that the Plaintiff had ongoing part-time jobs during the period of alleged disability. Emphasizing the Plaintiff's account of his daily activities, his active employment, and stable mental condition with medication and therapy, the ALJ concluded that the objective evidence did not support Dr. Patta's and Ms. Kolstad-Blanchard's conclusion that the Plaintiff was totally disabled. Based on the testimony of a vocational expert, the ALJ found that the Plaintiff's RFC did not permit him to perform his past relevant work, but that he could perform other jobs that existed in significant number in the economy, thus denying the Plaintiff's claim at step five of the analysis.

The Appeals Council denied the Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner, *see* 20 C.F.R. § 404.981, and the Plaintiff initiated a timely action for judicial review. The Report and Recommendation, the Plaintiff's Objections, and the Defendant's Response to Plaintiff's Objections raise the following issues for this Court's consideration: (1) whether the ALJ properly evaluated the medical opinions of Dr. Patta and Dr. Arshad, the Plaintiff's treating psychiatrists; (2) whether the ALJ properly evaluated the medical opinions of the state agency experts; (3) whether the ALJ properly evaluated the credibility of the Plaintiff's testimony; (4) whether the ALJ properly determined the Plaintiff's RFC; and (5) whether the ALJ erred in determining whether there are jobs that exist in significant numbers in the national economy that the Plaintiff can perform.

## DISCUSSION

A reviewing court will affirm the denial of disability benefits so long as the ALJ's decision is supported by substantial evidence, meaning evidence "sufficient for a reasonable person to accept as adequate to support the decision," and the court will not reweigh evidence or substitute its judgment for that of the ALJ. *Ketelboeter v. Astrue*, 550 F.3d 620, 624 (7th Cir. 2008) (internal citation omitted). The ALJ must build a "logical bridge" between the evidence and his conclusions. *Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004). Even if "reasonable minds could differ" about whether a claimant is disabled, the Court will affirm the ALJ's denial of benefits so long as the decision has adequate support. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (quotation marks omitted).

To receive disability benefits under the Social Security Act, a claimant must be "disabled" as defined by the Act. 42 U.S.C. § 423(a)(1)(E). A claimant qualifies as disabled if he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Moreover, a claimant's physical or mental impairment or impairments must be of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d)(2)(A).

A claim of disability is determined under a five-step sequential analysis. *Craft*, 539 F.3d at 673.

The first step considers whether the applicant is engaging in substantial gainful activity. The second step evaluates whether an alleged physical or mental impairment

4

is severe, medically determinable, and meets a durational requirement. The third step compares the impairment to a list of impairments that are considered conclusively disabling. If the impairment meets or equals one of the listed impairments, then the applicant is considered disabled; if the impairment does not meet or equal a listed impairment, then the evaluation continues. The fourth step assesses an applicant's [RFC] and ability to engage in past relevant work. If an applicant can engage in past relevant work, he is not disabled. The fifth step assesses the applicant's RFC, as well as his age, education, and work experience to determine whether the applicant can engage in other work. If the applicant can engage in other work, he is not disabled.

*Id.* at 674. The applicant bears the burden of proof in each of the first four steps. *Briscoe v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005). The government bears the burden of proof at the fifth step and must present evidence establishing that the applicant possessed the RFC to perform work that exists in a significant quantity in the national economy. 42 U.S.C. § 423(d)(2)(A); *Liskowitz v. Astrue*, 559 F.3d 736, 740 (7th Cir. 2009).

## A.     Opinions of Treating Psychiatrists

The opinions of treating physicians are entitled to "special significance" under Social Security regulations. SSR 96–8p. The regulations explain:

Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.

20 C.F.R. § 404.1527(c)(2).  Even when the treating physician's opinion does not deserve "controlling weight," the ALJ must consider certain factors—namely (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the

treatment relationship; (3) how supportable the doctor's medical opinion is; (4) how consistent the doctor's opinion is with the record; (5) the doctor's specialization; and (6) other factors that might support or contradict the doctor's opinion—to determine what weight to give the opinion. *Id.* The ALJ must always offer "good reasons" for discounting a treating physician's opinion, *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010).

1.      *Dr. Patta*

In his objections to the Magistrate's Report and Recommendation, the Plaintiff argues that the ALJ failed to provide good reason for discounting Dr. Patta's opinion. (Pl.'s Mot. for Review of Magistrate Judge Decision 2, ECF No. 32.) The Plaintiff further contends that the Magistrate Judge erroneously concluded that the ALJ cited substantial evidence to support his decision to discount Dr. Patta's opinion. (*Id.*) Given the ALJ's limited analysis of Dr. Patta's opinion, the Plaintiff maintains that the ALJ failed to build an accurate and logical bridge between the evidence and his findings.

The Court disagrees with the Plaintiff. The Plaintiff's argument rests on a narrow reading of the ALJ's opinion. Although the opinion contains only one paragraph addressing Dr. Patta's opinion, that paragraph is preceded by a thorough review of the Plaintiff's activities of daily living (ALJ Decision 6–7, R. 30), the testimony of the Plaintiff's sister (*Id.* 7), the Plaintiff's behavior at the administrative hearing (*Id.* 7–8), and the Plaintiff's treatment records (*Id.* 8). In the ALJ's view, this evidence demonstrated that the Plaintiff had mental limitations, but did not support the conclusion that these limitations were disabling. (*Id.*) Specifically, the ALJ found that the Plaintiff worked on a part-time, "fairly continuous" basis; that his treatment records

6

demonstrated his mental health was "fairly stable" with medication and therapy; that he did not

attend special education classes in school despite his borderline intellectual functioning range;

and that throughout his history of depression, he had never been admitted for inpatient

psychiatric treatment. (*Id.*)

Implicitly, the ALJ compared Dr. Patta's opinion with the evidence discussed above. The

ALJ's decision referenced the medical source statement of Dr. Patta, which the ALJ

characterized as suggesting "that [the Plaintiff] could not do full-time competitive work due to

his mood disorder problems." (ALJ Decision 9.)  The ALJ found that the evidence, including the

Plaintiff's daily activities, active employment during the period of alleged disability, and stable

mental condition with medication and therapy, did not support Dr. Patta's statement that the

Plaintiff was incapable of engaging in substantial gainful activity because of his mood disorder.

(*Id.*) Continuing his analysis, the ALJ considered the findings of the state agency psychologists,

who concluded that the Plaintiff could perform simple repetitive tasks with pace limitations and

noted that he should not be placed in a highly social environment. (*Id.*) The ALJ gave "great

weight" to the state agency psychologist's assessment because it was "consistent with the

evidence of record." (*Id.*)

Although the organization of the opinion makes it difficult to follow at times, the ALJ's

substantive analysis of the Plaintiff's RFC allows the Court to "to trace the ALJ's path of

reasoning," *Clifford v. Apfel*, 227 F.3d 863, 874 (7th Cir. 2000). "An ALJ . . . may discount a

treating physician's medical opinion if . . . the opinion 'is inconsistent with the opinion of a

consulting physician or when the treating physician's opinion is internally inconsistent, as long

as he minimally articulates his reasons for crediting or rejecting evidence of disability.'" *Schmidt*

*v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007) (quoting *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004)). The ALJ's opinion in the instant case meets this "very deferential" standard, *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008). Here, the ALJ compared the objective medical evidence, the Plaintiff's activities of daily living, and the findings of the state agency psychologists with the opinion of Dr. Patta. Based on this comparison, the ALJ concluded that Dr. Patta's opinion was not supported by the available evidence and, consequently, discounted Dr. Patta's opinion. *Cf. Skarbek*, 390 F.3d at 503 (finding ALJ's statement that treating source's opinion "was not well-supported by medical evidence" constituted an "adequate explanation").

Ultimately, the Seventh Circuit has noted that "in the end, it is up to the ALJ to decide which doctor to believe—the treating physician who has experience and knowledge of the case, but may be biased, or the consulting physician, who may bring expertise and knowledge of similar cases—subject only to the requirement that the ALJ's decision be supported by substantial evidence." *Books v. Chater*, 91 F.3d 972, 979 (7th Cir. 1996) (quoting *Micus v. Bowen*, 979 F.2d 602, 608 (7th Cir. 1992)) (quotation marks and ellipsis omitted). The Plaintiff's arguments are an invitation for this Court to reweigh the evidence and substitute its judgment for that of the ALJ, which is not a proper reviewing function. *See Nelson v. Apfel*, 131 F.3d 1228, 1234 (7th Cir. 1997).

However, the Court finds that remand is warranted on other grounds. Courts in the Seventh Circuit have criticized Social Security decisions in which the presiding ALJ failed to address the checklist of factors set forth in 20 C.F.R. § 404.1527(c)(2) after finding that a treating source's opinion was not entitled to controlling weight. *See, e.g., Campbell*, 627 F.3d at 309 (reversing where the ALJ did not explicitly address the checklist of factors, the proper

consideration of which may have caused the ALJ to accord greater weight to the doctor's opinion); *Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010) (criticizing the ALJ's decision for failing to address the "required checklist of factors" and remanding with instructions to afford the plaintiff's treating psychiatrist's opinion controlling weight); *Tenhove v. Colvin*, — F. Supp. 2d —, 2013 WL 694829, at *14 (E.D. Wis. February 26, 2013) (criticizing ALJ's failure to discuss regulatory factors and remanding for reconsideration of weight to be afforded to treating physician's opinion); *Fuller v. Astrue*, No. 12 C 0171, 2013 WL 617073, at *12 (N.D. Ill. Feb. 19, 2013) (remanding to consider weight afforded to treating physician's opinion with instruction to explicitly consider the factors set forth in 20 C.F.R. § 404.1527(c)(2) if the ALJ determined that treating physician's opinion was not entitled to controlling weight); *Johnson v. Astrue*, No. 10 C 7848, 2013 WL 453186, at *11 (N.D. Ill. Feb. 6, 2013) (same).

In *Campbell*, the Seventh Circuit reviewed an ALJ's finding that the opinion of the plaintiff's treating psychiatrist, Dr. Powell, was not entitled to controlling weight. *Campbell*, 627 F.3d at 308. The court analyzed Dr. Powell's opinion under 20 C.F.R. § 404.1527(c)(2), noting that Dr. Powell treated the plaintiff for fifteen months; she treated the plaintiff on a monthly basis; she was a psychiatrist; and her findings were "relatively consistent" throughout her treatment of the plaintiff. *Id.* In the Court's view, "[p]roper consideration of these factors may have caused the ALJ to accord greater weight to Dr. Powell's opinion." *Id.* Therefore, the court remanded the case to the ALJ with instructions to explicitly consider the factors set out in 20 C.F.R. § 404.1527(c)(2).

Similarly, in *Fuller*, the court considered an ALJ's finding that the opinion of the plaintiff's treating psychiatrist, Dr. Penepacker, was not entitled to controlling weight. *Fuller*,

2013 WL 617073, at *12. The court observed that "many of the factors support the conclusion that Dr. Penepacker's opinion should be given great weight: he is a psychiatrist who treated the plaintiff on a regular basis for almost two years; his findings were supported by diagnostic observations; and his findings were consistent with the medical evidence." *Id.* Quoting *Campbell*, the court concluded that "[p]roper consideration of these factors may have caused the ALJ to accord greater weight to [Dr. Penepacker's] opinion" and remanded the case to the ALJ with instructions to reevaluate the weight afforded to Dr. Penepacker's opinions based on a consideration of those factors. *Id.*

In this case, the ALJ may have properly considered the 20 C.F.R. § 404.1527(c)(2) factors in deciding what weight to afford Dr. Patta's opinion. However, the ALJ's opinion does not contain written evidence of this determination and the Court cannot substitute its own judgment for that of the ALJ. Dr. Patta treated the Plaintiff on a regular basis for six months; he is a licensed psychiatrist; and his findings were supported by diagnostic observations. Whether these factors entitle Dr. Patta's opinion to substantial weight, some weight, or no weight at all is a decision for the ALJ to make. On remand, the ALJ should explicitly consider the 20 C.F.R. § 404.1527(c)(2) factors and state what weight he affords Dr. Patta's opinion.

2.    *Dr. Arshad*

Next, the Plaintiff challenges the ALJ's failure to address the medical opinion of Dr. Arshad. In his Report and Recommendation, the Magistrate Judge disagreed with the Plaintiff's challenge of the ALJ's treatment of Dr. Arshad's opinion:

> Landing [the Plaintiff] criticizes the ALJ for failing to mention the opinion
> of Dr. Arshad who treated Landing in 2006 and 2007. However, Dr. Arsahd's

> assessment was not substantially different from that of Patta and Kolstad-Blanchard.
> Therefore, the ALJ's omission did not affect his ultimate finding that Landing was
> not disabled.

(Report and Recommendation 14 n.7, ECF No. 31.) The Plaintiff argues that Dr. Arshad's

opinion was not identical to that of Dr. Patta or Dr. Kolstad-Blanchard. (Pl.'s Mot. for Review of

Magistrate Judge Decision 3.) Therefore, the Plaintiff contends that the ALJ was required to

address Dr. Arshad's opinion in his decision. (*Id.*)

On August 18, 2006, David Johnson, a therapist at Swanson Center, referred the Plaintiff

for a psychiatric evaluation and medication management with Dr. Arshad. (R. 583.) Later that

month, on August 29, 2006, Dr. Arshad conducted a psychiatric evaluation of the Plaintiff and

diagnosed the Plaintiff with Bipolar Mood Disorder, Mixed and a GAF score of 50. (R. 571–72.)

Dr. Arshad treated the Plaintiff on quarterly basis until April 21, 2007. At that time, Dr. Arshad

completed a Report of Psychiatric Status, detailing his treatment of the Plaintiff and evaluating

the Plaintiff's functional limitations as a result of the Plaintiff's mental impairments. (R.

689–695.) Based on his treatment of the Plaintiff, Dr. Arshad diagnosed the Plaintiff with

Schizoaffective Disorder, Bipolar I Disorder - Mixed, and a GAF of 50. (R 689.) Dr. Arshad

recounted the Plaintiff's symptoms of depression and anxiety, noting that the Plaintiff's

symptoms had been "somewhat ameliorated" by his medication regimen. (R. 690.) According to

Dr. Arshad, the Plaintiff's depression prevented him from completing tasks or attending his part-

time job. (R. 691.) Further, Dr. Arshad observed that the Plaintiff had difficulty in conducting

himself appropriately in workplace settings, particularly when the Plaintiff was experiencing a

manic episode. (*Id.*) With respect to the Plaintiff's functional capacity, Dr. Arshad found that the

Plaintiff's mood would swing between frustration, anger, and boredom in attempting to perform

a simple work routine. (R. 694.) In addition, Dr. Arshad opined that the Plaintiff would struggle

to follow through on assigned tasks and would need frequent breaks to perform part-time work.

(*Id.*) Given these findings, Dr. Arshad concluded that the Plaintiff's prognosis going forward was

"fair." (R. 695.)

The opinion of a treating physician is entitled to controlling weight if the opinion "is

well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not

in-consistent with the other substantial evidence." 20 C.F.R. § 404.1527(d)(2). Special weight is

given to the opinion of a Social Security plaintiff's treating physician because of his greater

familiarity with the plaintiff's medical condition and treatment. *Gudgel v. Barnhart*, 345 F.3d

467, 470 (7th Cir. 2003). Consequently, if an ALJ discounts the opinion of a plaintiff's treating

physician, he must set forth "good reasons" for doing so. *Campbell*, 627 F.3d at 306. After

finding that a treating physician's opinion is not entitled to controlling weight, an ALJ must use

the checklist of factors set forth in 20 C.F.R. § 404.1527(c)(2) to determine whether a treating

physician's opinion deserves substantial weight, some weight, or no weight at all. *Id.* at 309.

An ALJ is required to minimally articulate his reasons for accepting or rejecting evidence

of a Social Security plaintiff's disability. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004).

This standard is "very deferential" or "lax,"  *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008),

but is not met when an ALJ fails to consider an entire line of evidence. *Diaz v. Chater*, 55 F.3d

300, 307 (7th Cir. 1995) (citing *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994)). Here, the

ALJ's decision does not discuss Dr. Arshad's opinion regarding the Plaintiff's functional

capacity. In one paragraph, the ALJ briefly discusses Dr. Patta's and Dr. Kolstad-Blanchard's

opinions, implicitly finding that they were not deserving of controlling weight. (ALJ Decision

12

8–9.) This paragraph contains no mention of Dr. Arshad. Therefore, it is unclear to the Court what weight, if any, the ALJ gave to Dr. Arshad's opinion. While it is possible that the ALJ appropriately weighed Dr. Arshad's opinion against the objective medical evidence and concluded that it was not entitled to controlling weight, the Court is unable to make this determination based on the ALJ's written decision. On remand, the ALJ should explicitly discuss Dr. Arshad's findings, explain whether they are entitled to controlling weight, and, if they are not entitled to controlling weight, make clear what weight, if any, they deserve, considering the factors set forth in 20 C.F.R. § 404.1527(c)(2).

The Court cannot excuse the ALJ's failure to address Dr. Arshad's opinion under the harmless error doctrine. It is well-established that the opinion of a treating source is entitled to special significance under Social Security regulations and Seventh Circuit precedent. Given the familiarity a treating source has with a plaintiff's medical condition and treatment, a decision adjudicating a plaintiff's disability that does not mention the opinion of a treating source is of limited value at best. An error is harmless when it is "predictable with great confidence that the agency will reinstate its decision on remand." *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010). This analysis is prospective and "not an exercise in rationalizing the ALJ's decision." *McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011). The Court is unable to determine with any confidence whether the agency will reinstate its decision on remand because the agency failed to articulate any reasons for denying Dr. Arshad's opinion controlling weight. Consequently, the Court has no place to start its review. Under these circumstances, excusing the agency's failure to address Dr. Arshad's opinion under the harmless error doctrine would be inappropriate.

13

**B.      State Agency Psychologists**

Next, the Plaintiff challenges the ALJ's conclusion that the opinions of the state agency psychologists should be given "great weight." (Pl.'s Mot. for Review of Magistrate Judge Decision 3–4.) According to the Plaintiff, the ALJ failed to provide sufficient support for his conclusion that the opinions of the state agency psychologists were consistent with the evidence of record.

"State agency medical and psychological consultants and other program physicians, psychologists, and other medical specialists are highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation." 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i). When considering the findings of a state agency consultant, the ALJ should evaluate their findings based on "the consultant's medical specialty and expertise in our rules, the supporting evidence in the case record, supporting explanations the medical or psychological consultant provides, and any other factors relevant to the weighing of the opinions." *Id.* §§ 404.1527(e)(2)(ii); 416.927(e)(2)(ii). Ultimately, "an ALJ is required to determine the weight a nontreating physician's opinion deserves by examining how well [the physician] supported and explained his opinion." *Simila v. Astrue*, 573 F.3d 503, 515 (7th Cir. 2009).

Here, after reviewing the Plaintiff's treatment records and activities of daily living (ALJ Decision 6–8), the ALJ considered the findings of the state agency psychologists (*id.* 9).  The ALJ noted that the state agency psychologists concluded that the Plaintiff could perform simple repetitive tasks with pace limitations and should not work in a highly social environment. (*Id.*) The ALJ then stated that "[i]n determining the mental portion of the residual functional capacity,

the undersigned gives great weight to the State agency's assessment, since it is consistent with the evidence of record." (*Id.*)

Analogously, in *Skarbek*, the ALJ discounted the opinion of the plaintiff's treating physician because it "was not well-supported by medical evidence." 390 F.3d at 503. The Seventh Circuit held that this conclusory statement was an "adequate explanation" for discounting the treating physician's opinion. *Id.* In this case, the Plaintiff maintains that the ALJ's discussion of the state agency psychologists' findings was inadequate because the ALJ did not cite specific portions of the record to support his conclusion that the state agency psychologists' findings were entitled to great weight. But the Court in *Skarbek* did not require any citations to the record to uphold the ALJ's decision in an analogous situation nor has the Plaintiff identified any Seventh Circuit case law to support such a requirement. Here, the ALJ found that the opinions of the state agency psychologists were entitled to great weight because they were supported by the medical evidence. This reasoning is sufficient under Seventh Circuit precedent and does not require remand.

On May 1, 2007, a consultative examiner, Sharon Sacks, PhD, completed a Disability Determination - Psychological Assessment after examining the Plaintiff . (R. 697–99.) The Plaintiff completed the WAIS-III evaluation with a full scale IQ score of 77, placing him in the Borderline Intellectual range. (R. 698.) Dr. Sachs observed that the Plaintiff was cooperative during his evaluation and had minimal difficulty interacting with her. (R. 699.) Further, Dr. Sachs noted that the Plaintiff's anxiety and depressive symptoms were under control with the help of psychotropic medications. (*Id.*) In conclusion, Dr. Sachs diagnosed the Plaintiff with Depressive Disorder NOS, Borderline Intellectual Functioning, and a GAF of 60. (*Id.*)

Another state agency psychologist, B. Randal Horton, Psy.D., completed a Psychiatric Reveiw Technique (R. 700–13) and a Mental Residual Functional Capacity Assessment (R. 714–17) on May 31, 2007, based on his review of the Plaintiff's medical records. Dr. Horton found that the Plaintiff's mental impairments mildly restricted his activities of daily living and caused the Plaintiff mild difficulties in social functioning. (R. 710.) Further, the Plaintiff's mental impairments resulted in moderate difficulties in maintaining concentration, persistence, or pace. (*Id.*) Dr. Horton found no evidence of episodes of decompensation of extended duration. (*Id.*) After reviewing the Plaintiff's treatment records and the Plaintiff's account of his activities of daily living, Dr. Horton concluded that the Claimant retained the ability to perform simply, repetitive tasks in an environment with limited social interaction. (R. 716.)

Substantial evidence in the record supports the ALJ's decision to afford great weight to the findings of the state agency psychologists. On April 3, 2007, the Plaintiff completed a report on his activities of daily living. (R. 365–67.) The Plaintiff's reported activities of daily living included: cooking, driving, reading, and hobbies. (R. 365.) According to the Plaintiff, he had no problems getting along with people in his last job, but a manager had informed him that he worked too slow. (R. 366.) Further, the Plaintiff stated that he worked five to six hours a week at a printing company and about ten hours per week at a television station. (*Id.*)

Over the course of the Plaintiff's treatment at Swanson Center from 2006 through 2007, Dr. Arshad and Dr. Aggarwal noted that the Plaintiff was mentally stable while on medication and exhibited improvement in his ability to cope with his anxiety and depression. Dr. Aggarwal observed that the Plaintiff was "stable on medication" (R. 567.) On March 3, 2007, the Plaintiff reported that he had "ended one job that was not rewarding and ha[d] started another [job] about

which he [felt] very positive." (*Id.*) Further, the Plaintiff stated that he was experiencing reduced anxiety and an increased capacity to deal effectively with anxious feelings. (R. 568.) On March 6, 2007, David Johnson, a clinician at the Swanson Center, completed an evaluation of the Plaintiff's mental impairments after examining the Plaintiff. (R. 661–64.) The Plaintiff reported that he not experienced any symptoms of distress or depression since he began his medication regimen in 2006. (R. 661.) Mr. Johnson noted that the Plaintiff experienced anxiety, resulting in minimal interference with the Plaintiff's daily functioning. (*Id.*) With respect to his anxiety, the Plaintiff explained that he was worried about finding a job, but felt better when he was actively looking for work. (*Id.*) Mr. Johnson found that the Plaintiff had minimal difficulty in performing meaningful activity, including work. (R. 662.) According to the Plaintiff, he had no problems taking care of his personal needs, but had minimal difficulty with his memory and learning new things. (*Id.*) Mr. Johnson found that the Plaintiff did not have trouble moderating his behavior. (R. 663.) Treatment records from the Madison Center in Michigan City indicate that the Plaintiff continued to struggle with anxiety and depression during the summer of 2007, but that these symptoms were well-controlled with medication. (R. 729–42.) Throughout his treatment with Dr. Patta in 2008 through 2009, the Plaintiff experienced fluctuations in mood. (R. 745–55.) Nonetheless, Dr. Patta found that the Plaintiff's mental impairments were relatively well-controlled by medication. (*Id.*)

Although an ALJ is "not bound by any findings made by State agency medical or psychological consultants," 20 C.F.R. § 404.1527(f)(2)(i), he or she is entitled to rely on the opinion of a state agency medical consultant because of his or her expertise in Social Security disability evaluation. *See Flener ex rel. Flener v. Barnhart*, 361 F.3d 442, 447–48 (7th Cir.

2004). "The fact that these physicians reviewed the entire record strengthens the weight of their conclusions." *Id.* at 448 (citing *Hudson v. Barnhart*, 345 F.3d 661, 667 (8th Cir. 2003)). The ALJ gave great weight to the findings of the state agency psychologists because they were consistent with medical evidence of record. Substantial evidence supports the ALJ's decision. Consequently, the Court finds that the ALJ's finding that the opinions of the state agency psychologists were entitled to great weight was appropriate under the circumstances.

## C.      Credibility Determination

Next, the Plaintiff argues that the ALJ's credibility determination was erroneous because he failed to establish an accurate and logical bridge between the Plaintiff's testimony and the credibility determination. (Pl.'s Mot. for Review of Magistrate Judge Decision 4.) Specifically, the Plaintiff contends that "the ALJ failed to properly articulate how Plaintiff's daily activities support the ALJ's findings that Plaintiff was not credible." (*Id.*) Here, it is unclear whether the ALJ referenced the Plaintiff's activities of daily living to support his credibility determination or his RFC assessment. In the Court's view, the ALJ appears to cite the Plaintiff's activities of daily living to support his RFC assessment and his conclusion that the Plaintiff was not totally disabled. The ALJ's decision is confusing to the extent that it includes a discussion of the Plaintiff's daily activities prior to his credibility determination (ALJ Decision 7), but does not reference those activities of daily living again until concluding that the Plaintiff was not totally disabled (*id.* 9). Although the Court believes the Plaintiff's argument is best considered as a challenge to the ALJ's RFC assessment, the Court will review the ALJ's credibility finding to determine if it was patently wrong.

18

An ALJ must make a credibility determination using the factors set forth in S.S.R. 96-7p. "In determining credibility an ALJ must consider several factors, including the claimant's daily activities, her level of pain or symptoms, aggravating factors, medication, treatment, and limitations, *see* 20 C.F.R. § 404.1529(c); S.S.R. 96–7p, and justify the finding with specific reasons." *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009). Although an ALJ must provide specific reasons for his credibility findings, *see id.*, his credibility determinations are entitled to "special deference" and will not be overturned unless "patently wrong," *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010). "It is only when the ALJ's determination lacks any explanation or support that we will declare it to be 'patently wrong.'" *Elder v. Astrue*, 529 F.3d 408, 413–14 (7th Cir. 2008) (quoting *Jens v. Barnhart*, 347 F.3d 209, 213 (7th Cir. 2003)).

Here, the ALJ began his discussion of the Plaintiff's credibility with the following statement:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

(ALJ Decision 7.) The Seventh Circuit has criticized this boilerplate language:

> In *Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010), we called this "meaningless boilerplate. The statement by a trier of fact that a witness's testimony is 'not entirely credible' yields no clue to what weight the trier of fact gave the testimony"; *see also Punzio v. Astrue*, 630 F.3d 704, 709 (7th Cir. 2011); *Martinez v. Astrue*, 630 F.3d 693, 696–97 (7th Cir. 2011); *Spiva v. Astrue*, 628 F.3d 346, 348 (7th Cir. 2010). "Such boilerplate language fails to inform us in a meaningful, reviewable way of the specific evidence the ALJ considered in determining that claimant's complaints were not credible. More troubling, it appears that the Commissioner has repeatedly been using this same boilerplate paragraph to reject the testimony of numerous claimants, without linking the conclusory statements contained therein to evidence in the record or even tailoring the paragraph to the facts at hand, almost without regard to whether the boilerplate paragraph has any relevance to the case." *Hardman v. Barnhart*, 362

F.3d 676, 679 (10th Cir. 2004) (citation omitted).

*Bjornson v. Astrue*, 671 F.3d 640, 645 (7th Cir. 2012). This boilerplate is unhelpful because it "gets things backward because a claimant's credibility is assessed as an input to the ALJ's determination of an appropriate RFC. One does not first decide the RFC and then reject as not credible anything inconsistent with it." *Robinson v. Astrue*, No. 1:11–cv–01591–DML–SEB, 2013 WL 1002883, at *4 (S.D. Ind. Mar. 13, 2013) (citing *Bjornson*, 671 F.3d at 645–46.) If an ALJ includes this boilerplate language but explains his conclusion adequately, the inclusion of that language is harmless and remand is unwarranted. *Filus v. Astrue*, 694 F.3d. 863, 868 (7th Cir. 2012).

Prior to determining the Plaintiff's credibility, the ALJ reviewed the Plaintiff's testimony at the administrative hearing (ALJ Decision 6–7), the Plaintiff's activities of daily living (*id.* 7), the Plaintiff's appearance and behavior at the administrative hearing (*id.* 7–8), and the Plaintiff's treatment records (*id.* 8). After reviewing this evidence, the ALJ acknowledged that the Plaintiff "clearly" suffered from multiple mental impairments. (*Id.*) However, the ALJ concluded, the Plaintiff's testimony concerning the effects of these impairments was not supported by the evidence. (*Id.*) The Plaintiff testified that he suffered from anxiety, depression, a learning disability, and anger management problems. (ALJ Decision 8.) Further, the Plaintiff stated that he had problems understanding new information and could only work at a slow pace. (*Id.*) The ALJ considered the Plaintiff's testimony, but noted that the Plaintiff was able to perform part-time work "on a fairly continuous basis" during the relevant time period; treatment records indicated that the Plaintiff's mood was stable as long as he adhered to a medication regimen; the Plaintiff did not attend special education classes in school; and the Plaintiff had no inpatient

psychiatric hospitalizations during the relevant time period. (*Id.*)

An ALJ's credibility determination is "patently wrong" only if it lacks *any* explanation or support. *Elder*, 529 F.3d at 413–14. Having reviewed the ALJ's credibility determination, the Court finds that it meets this deferential standard. The ALJ compared the Plaintiff's testimony with his appearance and behavior at the administrative hearing, his activities of daily living, and his treatment records and found that the Plaintiff's testimony was not supported by the evidence of record. (ALJ Decision 6–8.) The ALJ cited specific facts that undermined the Plaintiff's testimony, and, consequently, his credibility. (*Id.* 8.) Although disorganized, the explanation supporting the ALJ's credibility determination was sufficient under the circumstances. Nonetheless, to dispel any remaining confusion, the ALJ should clarify the impact of the Plaintiff's activities of daily living on his credibility determination. First, the ALJ should state whether or not he considered the Plaintiff's activities of daily living in his credibility determination. Second, if the ALJ did consider the Plaintiff's activities of daily living, he should explain why they support or undermine the Plaintiff's credibility.

### D.    RFC Assessment

As noted in the previous section, the Plaintiff appears to challenge the ALJ's RFC assessment. The Plaintiff argues:

> In crafting the RFC determination, the ALJ noted in the decision that "the undersigned does not find total disability as evidence [sic] by the *claimant's daily activities*, active employment, and stable mental condition with medication and therapy" and also "[b]ased on the evidence of record, including the *testimony* at the hearing and observation of the claimant at the hearing, the undersigned is persuaded that the finding that the claimant can perform a restricted range of unskilled light work." As such, when dismissing the credibility of Plaintiff's testimony, in part on the basis of his daily activities, the ALJ was required to articulate how those

21

activities support his conclusion.

(Pl.'s Mot. for Review of Magistrate Judge Decision 4–5  (emphasis in the Plaintiff's Motion).)

At step four of the sequential evaluation process, an ALJ must complete a residual functional capacity assessment pursuant to 20 C.F.R. § 404.1545. In assessing an applicant's RFC, an ALJ will consider all of the relevant medical and nonmedical evidence in the record. 20 C.F.R. § 404.1545(a)(3); *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001). This includes an applicant's reports of daily activities. SSR 96–8p; *see also* SSR 85-16 (noting that "[t]he determination of mental RFC involves the consideration of evidence, such as . . . [r]eports of the individual's activities of daily living and work activity."). "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96–8p.

Here, the ALJ found that the Plaintiff was capable of performing light work with numerous exertional and nonexertional limitations. (ALJ Decision 5–6.) To support his RFC assessment, the ALJ reviewed the Plaintiff's testimony, the testimony of the Plaintiff's sister, reports of the Plaintiff's daily activities, the Plaintiff's appearance and behavior at the administrative hearing, the Plaintiff's treatment records, the opinions of the Plaintiff's treating psychologists, and the opinions of the state agency psychologists and consultative examiner. (*Id.* 6–9.) The ALJ incorporated a number of the limitations recommended by the Plaintiff's treating sources into his RFC and cited the findings of the state agency psychologists as the basis for his RFC. (*Id.* 9.) The ALJ's failure to explain the import of the Plaintiff's activities of daily living is does not constitute legal error because the ALJ cited specific medical and nonmedical evidence

to support his RFC assessment as required by SSR 96–8p.

**E.      Step Five of the Sequential Evaluation**

Finally, the Plaintiff challenges the ALJ's determination that there are jobs that exist in the national economy that the Plaintiff could perform. (Pl.'s Mot. for Review of Magistrate Judge Decision 5–7.) According to the Plaintiff, "the VE [vocational expert] failed to provide concrete testimony, giving generic occupations without providing the DOT numbers." (*Id.* 5 (quotation marks omitted).) The Plaintiff maintains that without specific Dictionary of Occupational Titles (DOT) numbers:

> it is impossible to determine what occupations within the generic categories are being cited. It is possible that all 17,000 jobs posited by the VE in the broad categories were derived from occupations outside of Plaintiff's RFC, leaving an unacceptable uncertainty where the burden of proving that there is substantial evidence of a significant number of jobs exist in the economy at Step Five remains with the Commissioner.

(*Id.* 6.)

1.      *VE's Failure to Cite Specific DOT Numbers*

The Plaintiff does not cite any legal authority for the proposition that remand is warranted where a VE refers to generic occupational titles without citing specific DOT numbers. The SSA's policy interpretation ruling on the use of vocational experts during an administrative hearing, SSR 00-4p, does not require a vocational expert to cite DOT numbers. *Merritt v. Astrue*, F. Supp. 2d 742, 756 n.1 (N.D. Ill. 2012) (citing *Mueller v. Astrue*, 860 F. Supp. 2d 615, 639–40 (N.D. Ill. 2012)). At the administrative hearing, the Plaintiff's counsel conducted a perfunctory cross-examination of the VE and did not ask the VE to explain the job requirements in more

23

detail or ask the ALJ to keep the record open so that he could cross-check the jobs the VE identified with the DOT despite the opportunity to do so. The Court finds no error in the VE's failure to cite specific DOT numbers when testifying at the administrative hearing.

2.    *Potential Conflict Between VE's testimony and the DOT*

Of greater concern to the Court is the potential conflict between the VE's testimony and the information provided by the DOT and Selected Characteristics of Occupations (SCO) Manual. At step five of the sequential evaluation, the government must prove that a significant number of jobs exist in the national economy which a claimant can perform despite his or her physical and mental limitations. 20 C.F.R. § 404.1520(a)(4)(v); *Weatherbee v. Astrue*, 649 F.3d 565, 569 (7th Cir. 2011). "The Commissioner typically uses a [VE] to assess whether there are a significant number of jobs in the national economy that the claimant can do." *Liskowitz v. Astrue*, 559 F.3d 736, 743 (7th Cir. 2009) (citing *Lee v. Sullivan*, 988 F.2d 789, 793 (7th Cir. 1993)). Evidence presented by a VE should be consistent with the occupational information supplied by the DOT. SSR 00-4p. The ALJ has an affirmative duty to ask whether a VE's testimony conflicts with the information provided in the DOT and is charged with the responsibility of resolving any conflicts between the testimony of a VE and the DOT. *Id.* "A claimant's counsel, on cross examination, has the opportunity to draw the ALJ's attention to any of these conflicts." *Merritt*, 872 F. Supp. 2d at 756. If a claimant does not draw attention to such a conflict at the administrative hearing, he or she must demonstrate that a conflict was "obvious enough that the ALJ should have picked up on [it] without any assistance." *Overman v. Astrue*, 546 F.3d 456, 463 (7th Cir. 2008).

At the administrative hearing, a VE testified to aid the ALJ in his determination of whether there were a significant number of jobs in the national and regional economy that the Plaintiff could perform given his physical and mental limitations. (R. 76–80.) The ALJ presented the VE with a hypothetical fully incorporating the Plaintiff's limitations as set forth in his RFC assessment. (*Id.* 77–78.) Based on these limitations, the VE opined that the Plaintiff could work in light, unskilled positions, such as a shipping and receiving weigher, production inspector, and machine tender. (*Id.* 78.) The ALJ then inquired whether the VE's opinion were consistent with the description in the DOT and the SCO. (*Id.* 79.) The VE stated that they were "with the exception of the light positions that provided the sit stand option." (*Id.*) The VE continued, "the DOT doesn't recognize the fact that the positions may allow for [the sit stand option], but these positions are able to be performed on that with the numbers reduced to correspond with that fact and that's based upon my experience with labor market conditions." (*Id.*)

A brief review of the DOT, the SCO Manual, and Social Security case law reveals potential inconsistencies with the testimony of the VE. In his RFC assessment, the ALJ found that the Plaintiff was limited to light work that did not involve production rate pace work or mathematical information. (*See* ALJ Decision 6.) However, the DOT indicates that a shipping and receiving weigher may require working at production rate pace. DICOT 222.387-074, 1991 WL 672108 (G.P.O). Further, such a position requires an individual to "[a]dd, subtract, multiply, and divide all units of measure. Perform the four operations with like common and decimal fractions. Compute ratio, rate, and percent, Draw and interpret bar graphs. Perform arithmetic operations involving all American monetary units." *Id.* Like a shipping and receiving weigher, production inspectors may have to work at a production rate pace. *See Parks v. Soc.*

*Sec. Admin.*, 413 F. App'x 856, 861 (6th Cir. 2011) (VE testified "that productions inspectors work on a line and must meet quotas"); *White v. Astrue*, No. 3:10–cv–375, 2011 WL 2358548, at *7 (M.D. Tenn. June 8, 2011) (VE testified that assuming claimant could not work at production-rate paced quota jobs, claimant could not work as production inspector). Similarly, the DOT and SCO indicate that most, if not all, machine tender positions require an individual to work at a production rate pace. For example, an assembly machine tender may be required to work at a production rate pace and is required to "[a]dd and subtract two-digit numbers. Multiply and divide 10's and 100's by 2, 3, 4, 5. Perform the four basic arithmetic operations with coins as part of a dollar. Perform operations with units such as cup, pint, and quart; inch, foot, and yard; and ounce and pound." DICOT 754.685-014, 1991 WL 680374 (G.P.O.) Moreover, many of the machine tender positions require medium rather than light work.

The Plaintiff's counsel at the administrative hearing failed to raise the issue of any inconsistencies between the VE's testimony and the information contained in the DOT and SCO. Consequently, to establish the need for remand at this stage of the proceedings, the Plaintiff must demonstrate that there was an "obvious" inconsistency between the VE's testimony and the DOT and SCO. *Overman*, 546 F.3d at 463. The Plaintiff does not present any argument on this point. In *Overman*, the VE testified on direct that Overman could work as a hand packager or rack-room worker regardless of his poor vision and limited reading ability. *Id.* On cross-examination, however, Overman's attorney questioned the VE concerning the significance of Overman's vision problem and difficulties with reading. *Id.* In response, the VE contradicted his earlier testimony, stating that Overman's limited vision would eliminate both jobs and that Overman's difficulty reading would potentially prevent him from working as a hand packager. *Id.*

Nonetheless, the ALJ relied upon the VE's testimony on direct without developing the record and obtaining a "reasonable explanation" for the inconsistency in the VE's testimony. *Id.* at 464. The *Overman* panel concluded that "[t]he conflicts between the VE's supposedly DOT-based testimony on direct and his statements on cross-examination . . . should have been apparent to the ALJ." *Id.*

In contrast, here, the ALJ presented the VE with a thorough hypothetical, incorporating his complete RFC assessment. The VE testified that the Plaintiff could work in light, unskilled positions, such as a shipping and receiving weigher, production inspector, and machine tender, and confirmed that his findings were consistent with the DOT and SCO. On cross-examination, the Plaintiff's counsel failed to elicit any testimony or adduce any evidence that undermined the VE's testimony. With no identifiable conflict apparent, the ALJ relied on the VE's response to support his finding that a substantial number of jobs existed in the national and regional economy that the Plaintiff could perform.

Although the Court finds that any discrepancy between the VE's testimony and the DOT and SCO was not apparent at the administrative hearing, remand may still be warranted if the Court finds that the ALJ's finding was not supported by substantial evidence. Seventh Circuit precedent is mixed as to when a VE's testimony constitutes substantial evidence. On the one hand, *Overman* informs us that a VE's testimony satisfies the substantial evidence standard "only if that testimony is *reliable*. A finding based on unreliable VE testimony is equivalent to a finding that is not supported by substantial evidence and must be vacated." 546 F.3d at 464 (emphasis in original) (citations omitted). This statement of the law appears to be unequivocal.

However, the Court in *Overman* continued, noting that "[i]n both *Donahue and Barrett*,

27

we ruled that an ALJ may rely on imperfect VE testimony *if a claimant does not question the basis for the testimony at the time of the hearing*." *Id.* (emphasis added) (citing *Barrett v. Barnhart*, 355 F.3d 1065, 1067 (7th Cir. 2004); *Donahue v. Barnhart*, 279 F.3d 441, 446 (7th Cir. 2002)). Relying on *Donahue* and *Barrett*, the Government in *Overman* argued that the ALJ was permitted to rely on the VE's "unchallenged" and "uncontradicted" testimony because Overman did not challenge the VE's testimony on cross-examination at the administrative hearing. *Overman*, 546 F.3d at 465. Acknowledging the legal merits of the Government's arguments, the *Overman* Court rejected its factual premise:

> But Overman *did* challenge the VE's testimony. Unlike in *Donahue* and *Barrett*, Overman's counsel cross-examined the VE and elicited statements that seriously called into question the reliability of the VE's bottom-line conclusions. Perhaps Overman's inquiry into the basis for the VE's testimony could have been more thorough. But a disability adjudication is "a hybrid between the adversarial and inquisitorial models," *Donahue*, 279 F.3d at 446, and if the basis of the VE's testimony is questioned at the hearing, "then the ALJ should make an inquiry . . . to find out whether the purported expert's conclusions are reliable," *id.*; *see also McKinnie*, 368 F.3d at 911. No such inquiry was performed here. Instead, the ALJ unquestioningly relied on the VE's bottom line, a bottom line later determined to be in irreconcilable conflict with the DOT. There may be additional work of which Overman is capable of performing, but the record does not support the conclusion that he can perform either of the two positions identified by the VE.

*Overman*, 546 F.3d at 465 (emphasis in the original).

In *Donahue*, the ALJ presented the VE with a statement of the claimant's physical and mental abilities and restrictions. 279 F.3d at 446. Based on this information, the VE identified specific job titles that the claimant could perform and the number of those jobs in the national economy. *Id.* The claimant's counsel failed to cross-examine the VE on any discrepancies with the DOT or the basis for the VE's calculation of the number of jobs available in the national economy. *Id.* The *Donahue* court explained:

28

What, then, happens when the discrepancy is unexplored? *When no one questions the vocational expert's foundation or reasoning, an ALJ is entitled to accept the vocational expert's conclusion, even if that conclusion differs from the Dictionary's*—for the Dictionary, after all, just records other unexplained conclusions and is not even subject to cross-examination. If the basis of the vocational expert's conclusions is questioned at the hearing, however, then the ALJ should make an inquiry (similar though not necessarily identical to that of Rule 702) to find out whether the purported expert's conclusions are reliable. Social Security Ruling 00–4p, promulgated in December 2000 (and thus not directly applicable to this case), is to much the same effect. This ruling requires the ALJ to "[e]xplain [in the] determination or decision how any conflict [with the Dictionary] that has been identified was resolved." The ruling requires an explanation only if the discrepancy was "identified"—that is, if the claimant (or the ALJ on his behalf) noticed the conflict and asked for substantiation. Raising a discrepancy only after the hearing, as Donahue's lawyer did, is too late. An ALJ is not obliged to reopen the record. On the record as it stands—that is, with no questions asked that reveal any shortcomings in the vocational expert's data or reasoning—the ALJ was entitled to reach the conclusion she did.

*Id.* at 446–47 (emphasis added).

The record in this case is similar to *Donahue*. Here, the ALJ provided the VE with a hypothetical that fully incorporated the Plaintiff's mental and physical abilities and limitations. The VE considered this information, identified several jobs in the national economy that the Plaintiff could perform, and stated that his testimony was consistent with the DOT and SCO. The Plaintiff's attorney failed to raise any objection to the VE's testimony and did not identify any discrepancies between the VE's testimony and DOT and SCO. Consequently, as in *Donahue*, the ALJ was entitled to rely on the VE's testimony under the circumstances.

Although the Court does not find the ALJ committed legal error by relying on the VE's testimony, on remand, the Court suggests that the ALJ review the VE's testimony and seek clarification of any discrepancies between that testimony and the DOT and SCO. It is unclear from the record whether the VE fully considered the Plaintiff's inability to work at a production rate pace and his limitation to work involving no mathematical requirements.

3.     *Location of Regional Jobs*

In conclusion, the Plaintiff argues that many of the jobs identified by the VE and ALJ would be too far away from his residence in Michigan City, Indiana, for him to reasonably commute to on a daily basis. (Pl.'s Mot. for Review of Magistrate Judge Decision 6–7.) According to the Plaintiff:

> HALLEX 1-2-3-10 provides that a claimant should not travel more than 75 miles to a hearing site and, therefore, a 150 mile round trip should be considered within the upper limits of travel for a day within a region. As such, the number of jobs that are in actuality within a region where Plaintiff can live and commute to would be much smaller than the 6,000 jobs posited by the magistrate judge. We do not know where in Indiana these jobs exist.

(*Id.* 6.) The Court understands the Plaintiff to argue that, given the size of the state of Indiana and the uncertain location of jobs within the state, the ALJ's finding that there are a sufficient number of jobs in the regional economy that the Plaintiff could perform is not supported by substantial evidence. Notably, other than two Ninth Circuit cases that deal tangentially with this issue, the Plaintiff cites no authority to support his argument.

In 1968, Congress amended the Social Security statute, *See* Pub.L. No. 90-248 § 158(d)(2) (1968), 81 Stat. 821, to include the following language:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, *engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work*.

42 U.S.C.A. § 423(d)(2)(A) (emphasis added). The statute defines "work which exists in the national economy" as "work which exists in significant numbers either in the region where such individual lives or in several regions of the country." *Id.* "Prior to the amendment, some courts

had interpreted the definition of disability such that benefits could be denied only if jobs the claimants could perform existed within a reasonable commuting distance from their homes rather than within the national economy." *Isaacs v. Barnhart*, No. 4:05-cv-0185-DFH-WGH, 2006 WL 3240114, at *8 (S.D. Ind. Oct. 13, 2006) (citing 1967 U.S.C.C.A.N. at 2881-82). Social Security regulations further clarify the SSA's approach to determining whether works exists in the national economy:

> We consider that the work exists in the national economy when it exists in significant numbers either in the region where you live or in several other regions of the country. *It does not matter whether - (1) Work exists in the immediate area in which you live*; (2) A specific job vacancy exists for you; or (3) You would be hired if you applied for work.

20 C.F.R. § 404.1566(a) (emphasis added).

Considering these statutory and regulatory provisions, the Court finds that the Plaintiff's argument is without merit and that the ALJ appropriately focused his analysis on the existence of a significant number of jobs in the national economy.

### CONCLUSION

For the reasons stated above, the Court SUSTAINS IN PART and OVERRULES IN PART the Plaintiff's Objections to the Report & Recommendations [ECF No. 32] and ADOPTS IN PART the Report and Recommendation [ECF No. 31]. Accordingly, the decision of the Commissioner is AFFIRMED IN PART and REMANDED IN PART to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings in accordance with this opinion.

SO ORDERED on April 3, 2012.

s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT
FORT WAYNE DIVISION